```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF IOWA
 2                       CENTRAL DIVISION
    _____
 3                                )
    UNITED STATES OF AMERICA,     )
 4                                )    CASE NOS. 4:18-cr-114
            Plaintiff,            )              4:23-cr-69
 5                                )
       vs.                        )
 6                                )    TRANSCRIPT OF REVOCATION
                                  )    AND SENTENCING PROCEEDINGS
 7  ANTHONY TYRONE JACKSON, JR.,  )
                                  )
 8          Defendant.            )
    _____
 9
                                  COURTROOM 160, FIRST FLOOR
10                                U.S. COURTHOUSE
                                  123 East Walnut Street
11                                Des Moines, Iowa 50309
                                  Wednesday, February 14, 2024
12                                9:02 a.m.

13

14  BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, DISTRICT JUDGE

15  APPEARANCES:

16  For the Plaintiff:          MALLORY WEISER
                                United States Attorney's Office
17                              U.S. Courthouse Annex
                                110 East Court Avenue, Suite 286
18                              Des Moines, IA 50309

19
    For the Defendant:          DENNIS McKELVIE
20                              McKelvie Law Office
                                PO Box 213
21                              Grinnell, IA 50112

22

23
                    Chelsey Wheeler, CSR, RPR, FCRR
24                     United States Courthouse
                         123 East Walnut Street
25                        Des Moines, IA 50309
```

P R O C E E D I N G S

1

2          (In open court with the defendant present.)

3          THE COURT:  Thank you.  Please be seated.

4          We are here in the matter of the United States of

5    America versus Anthony Tyrone Jackson.  This is Case No.

6    4:23-cr-69 and 4:18-cr-114.  This is the time and date set both

7    for a sentencing and a revocation hearing.  My name, as you

8    know, is Rebecca Goodgame Ebinger, and I'm the district judge

9    presiding.

10          If counsel would please identify themselves for

11    purposes of the record.

12          MS. WEISER:  Mallory Weiser for the United States.

13          MR. McKELVIE:  Dennis McKelvie for the defendant.

14          THE COURT:  Thank you.

15          And we have with us from the United States Probation

16    Office U.S. Probation Officer Charity Rock, who I believe is

17    the author of the presentence investigation report in this

18    case, and U.S. Probation Officer Kristina Whitver, who has been

19    supervising the defendant on supervision.

20          So let's talk first about the revocation matter

21    briefly.  The allegations in the revocation were set forth in a

22    petition.

23          Mr. Jackson, did you get a copy of that petition?

24          THE DEFENDANT:  No, I didn't, Your Honor.

25          THE COURT:  Mr. McKelvie, have you had the opportunity

1    to go over that with him?

2            MR. McKELVIE:  Yes, Your Honor.

3            THE COURT:  Do you have it in front of you?

4            MR. McKELVIE:  Yes.

5            THE COURT:  So it's an amended petition is the

6    operative document here.  It was filed back just a few days

7    ago, January 10, 2024, indicating the convictions arising from

8    the allegations against you.

9            Do you see that, sir?

10           THE DEFENDANT:  (Nods head.)

11           THE COURT:  Mr. Jackson?

12           THE DEFENDANT:  Yes, I do, Your Honor.

13           THE COURT:  And you had the opportunity to talk about

14   that with your attorney?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  And the probation office prepared a

17   revocation worksheet in this case.

18           Ms. Weiser, have you had the opportunity to review

19   that worksheet?

20           MS. WEISER:  Yes, Your Honor.

21           THE COURT:  And do you agree it accurately sets forth

22   the statutes and guidelines for these alleged violations?

23           MS. WEISER:  Yes, Your Honor.

24           THE COURT:  Mr. McKelvie, have you had the same

25   opportunity?

1  MR. McKELVIE:  Yes, Your Honor.

2  THE COURT:  And do you agree it's accurate?

3  THE DEFENDANT:  Yes, Your Honor.

4  THE COURT:  So in this case all four of the

5  allegations are new law violations, and they all arise from the

6  charges for which a jury found the defendant guilty.

7  Mr. McKelvie, understanding that your client put the

8  case to a jury maintaining his innocence through trial, is that

9  the same position he's taking with these violations?

10  MR. McKELVIE:  Yes, Your Honor.

11  THE COURT:  Do you agree that the Court can consider

12  the evidence presented at trial and the guilty verdicts in

13  considering the sufficiency of the evidence for the revocation?

14  MR. McKELVIE:  Yes, Your Honor.

15  THE COURT:  Okay.  Does the Government intend to put

16  on any additional evidence on these revocations?

17  MS. WEISER:  No, Your Honor.

18  THE COURT:  Okay.  So there are four alleged

19  violations.  Each one corresponds to a count of conviction.

20  Felon in possession of a firearm would be Count 4, and it's

21  alleged violation No. 1.  Possession with intent to distribute

22  400 grams or more of a mixture containing fentanyl is Count 2,

23  it's also violation 2.  Conspiracy to distribute fentanyl and

24  marijuana is allegation No. 3.  It corresponds with Count No. 1

25  of the new indictment.  And violation No. 4 is possession of a

firearm in furtherance of a drug trafficking crime.  Violation

No. 4 corresponds with Count No. 3.

The jury returned verdicts of guilty on all of those

counts finding beyond a reasonable doubt that the defendant

committed those crimes.  The Court saw all of that evidence and

concurs in the conclusion of the jury that the defendant

committed each of those new law violations, and, for that

reason, the revocation petition is adequately supported in the

record.

Any objection to sentencing on these violations at the

conclusion of the case?

MS. WEISER:  No, Your Honor.

MR. McKELVIE:  No, Your Honor.

THE COURT:  And we'll allow for allocution as to the

revocation at the same time as the new case.

So turning to the new indictment in 4:23-cr-69,

Mr. Jackson, you recall that you were charged initially by way

of an indictment here in the Southern District of Iowa with

drug trafficking and firearms offenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Those charges were set forth in an

indictment naming you and a co-defendant in eight counts,

including forfeiture allegations.  There was a superseding

indictment that was filed that was applicable only to you on

July 18 of last year, and that matter proceeded to trial.  On

October 3 of last year, the jury found you guilty of all four

of the counts alleged against you in the superseding

indictment.

       Do you recall that, sir?

       THE DEFENDANT:  Yes, Your Honor.

       THE COURT:  You also agreed at the conclusion of the

case to forfeiture outlined in the superseding indictment or

you waived determination of that by the jury and consented to

the Court's determination.

       Do you recall that, sir?

       THE DEFENDANT:  Yes, Your Honor.

       THE COURT:  And the preliminary order of forfeiture

has subsequently been entered.

       Do you understand, sir, that you're here today for the

purpose of being sentenced on those findings of guilt?

       THE DEFENDANT:  Yes, I do, Your Honor.

       THE COURT:  Before I proceed further with the hearing,

I want to confirm that you're fully able to participate here

today.

       Are you currently under the influence of alcohol?

       THE DEFENDANT:  No, Your Honor.

       THE COURT:  Are you under the influence of any illegal

substances?

       THE DEFENDANT:  No, Your Honor.

       THE COURT:  Are you taking any prescription

1  medications?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  Are you suffering from any mental health

4  or physical illness or ailment that would cause you to be

5  unable to understand or participate in today's hearing, sir?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  If at any time during the hearing,

8  Mr. Jackson, you do not understand something I say or you have

9  a question, would you please stop me and let me know?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  The most important thing is that you

12  understand the proceedings.

13          In anticipation of this hearing, the United States

14  Probation Office prepared a presentence investigation report.

15  I have reviewed that report.  I have reviewed the sentencing

16  memoranda filed by the parties.  I have reviewed the materials

17  related to forfeiture.

18          I reviewed my notes from the trial in this case, and I

19  reviewed the exhibits that were presented in this case as well.

20          I also was the original sentencing judge on the

21  revocation case, and I have reviewed the materials related to

22  that case as well as the performance on supervision.

23          Are there any other materials that need to be brought

24  to the Court's attention at this time?

25          MS. WEISER:  No, Your Honor.

1          MR. McKELVIE:  No, Your Honor.

2          THE COURT:  So let's turn our attention to that

3     presence investigation report.

4          Ms. Weiser, have you had the opportunity to review

5     that report on behalf of the United States?

6          MS. WEISER:  Yes, Your Honor.

7          THE COURT:  And does the Government have any

8     outstanding factual objections or corrections to that report?

9          MS. WEISER:  No, Your Honor.

10         THE COURT:  Thank you.

11         Mr. McKelvie, have you and your client had the

12    opportunity to review the presentence investigation report in

13    this case?

14         MR. McKELVIE:  Yes, Your Honor.  When the draft PSR

15    came out, I got a copy to Mr. Jackson.  We went over it several

16    times.  Of course, Mr. Jackson had refuted his responsibility

17    by requesting a jury trial, and he still takes the same

18    position that he did at that point.

19         So while he objects to the results of the jury and the

20    facts that are in the presentence investigation report, for the

21    purposes of the report, the facts that are in that report are

22    accurate insofar as the jury has returned a verdict, but,

23    generally, he just doesn't agree with what the jury said.

24         And, of course, we're not just going to go through

25    that and relitigate all that stuff here, so he has that

position.  Otherwise, we don't have any disputes, additions,

corrections to the presentence investigation report.

THE COURT:  Thank you.

Mr. Jackson, we've been talking about the presentence

investigation report in this case.  Mr. McKelvie explained to

me how you all went about reviewing this document.

Do you recall going over it with your attorney as he

described?

THE DEFENDANT:  Yes, Your Honor.  See, I actually had

a copy of the presentence report, so I reviewed it myself, but

us personally, we really haven't had much time to go over it

together.

THE COURT:  Okay.

THE DEFENDANT:  I went over it on my own back in my

cell unit.

THE COURT:  Okay.  And that's not uncommon for

attorneys to allow the defendant to have the opportunity to go

over the material on their own.

Do you want time right now to talk to Mr. McKelvie

about the report, sir?

THE DEFENDANT:  No.  It's okay, Your Honor.

THE COURT:  If you need additional time, I'm more than

happy to let you review it with him if you have any questions

or need to discuss anything with him.

THE DEFENDANT:  I appreciate it, but no thank you,

1   Your Honor.

2         THE COURT:  Okay.  Mr. McKelvie has indicated to me

3   that your position remains as it was at trial, that you are

4   disagreeing with the evidence that was presented and the

5   conclusion of the jury but that you acknowledge that the

6   material put forth by the probation office is consistent with

7   the evidence that was presented at trial; is that accurate?

8         THE DEFENDANT:  I'm going to say I believe the

9   evidence and what they presented in the presentence -- or what

10  they presented in trial, that's correct, but I'm not saying

11  it's accurate that that's what the results were for me.

12        THE COURT:  Yes.  I understand that.  Okay.  Thank

13  you.

14        And there are other parts of the report in terms of

15  your background and other things like that, and Mr. McKelvie

16  has indicated to me that there are no errors in that section or

17  anything wrong with that portion of the report as well.

18        Do you understand that?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Do you agree that the report, setting

21  aside the offense conduct portion, is factually accurate or

22  correct?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Thank you.

25        Based upon that record, the Court will rely upon the

1    unobjected to factual information contained in the presentence

2    investigation report for determining the appropriate sentence

3    to impose in this case.

4            As to the offense conduct section, to the extent there

5    is a general objection to the material contained in the report,

6    the Court finds that it is accurate and that the material

7    contained in the report is consistent with that evidence

8    presented at trial, and the Court found that evidence to be

9    credible.

10            The report -- the offense conduct section of the

11    report is -- to the extent there is an objection, it's

12    overruled.

13            I note that the Court views the offense conduct

14    portion of the presentence report as a summary.  Obviously, the

15    Court saw the totality of the evidence at trial and has

16    reviewed that material in whole as well.

17            Any additional record in that regard from the

18    Government?

19            MS. WEISER:  No, Your Honor.

20            THE COURT:  From the defense?

21            MR. McKELVIE:  No, Your Honor.

22            THE COURT:  So that brings us to a discussion of the

23    United States Sentencing Guidelines.  There are four different

24    counts here.  Count 1 was a conviction of conspiracy to

25    distribute more than 400 grams of a mixture containing fentanyl

and marijuana, in violation of Title 21, United States Code,

Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), and 846.

Count 2 was possession with intent to distribute more than

400 grams of fentanyl mixture, in violation of some of the same

code sections, 841(a)(1) and 841(b)(1)(A) of Title 21.  Count 3

was possession of a firearm in furtherance of those drug

trafficking crimes, in violation of Title 18, United States

Code, Section 924(c)(1)(a)(i).  And then Count 4 is felon in

possession of a firearm, in violation of Title 18, United

States Code, Sections 924(g)(1) and 924(a) -- that's incorrect.

922(g)(1).  That's just a typo on the second page of the

presentence report.  922(g)(1) and 924(a)(8).

So those are the statutes that were found to have been

violated by the defendant, and then the advisory guidelines

calculate a recommended range of months for sentence to be

imposed.  Of course, it is just advisory, and the Court treats

it as such.

Because there is a mandatory consecutive five-year

sentence in Count 3, that count is separately considered, so

the group of counts together are the two drug convictions and

the felon in possession conviction.

The calculation as to the offense level computation

begins on page 14 at paragraph 49.  The base offense level,

based upon the weight of the fentanyl involved in the offense,

is a 30.  There's a two-level upward adjustment for the

1    defendant maintaining a premises for the purpose of

2    manufacturing or distributing a controlled substance, which

3    results in an adjusted offense level of 32.  The total offense

4    level is 32.

5         The defendant qualifies as a criminal history category

6    VI with -- I think it was 13 criminal history points.  The

7    guideline range recommended with a 32 and a VI is 210 to 262

8    months plus five years consecutive for Count 3, which results

9    in an effective range of 270 to 322.

10        Supervised release is recommended at five years for

11   the first two counts, two to five years for Count 3, and one to

12   three years for Count 4.  Probation is not an option under the

13   guidelines or the statute because of the mandatory minimums

14   involved.  The fine is recommended between 35,000 and

15   $10 million.

16        Does the Government have any objection to those

17   calculations?

18        MS. WEISER:  No, Your Honor.

19        THE COURT:  Does the defense?

20        MR. McKELVIE:  No, Your Honor.

21        THE COURT:  So the Court will look to that advisory

22   guideline range as one factor to consider in determining the

23   appropriate sentence to impose in this case.

24        That brings us to the question of departures.  I don't

25   believe the Government moved for a departure.

1          MS. WEISER:  Correct, Your Honor.

2          THE COURT:  Mr. McKelvie, you argued about

3    overrepresented criminal history, but I didn't view that as a

4    departure motion in the traditional sense; is that correct?

5          MR. McKELVIE:  Variance, Your Honor.

6          THE COURT:  Thank you.

7          So that brings us to the ultimate question in the

8    case, which is the appropriate disposition.  As I said, I

9    reviewed the trial evidence.

10          Any additional evidence as to disposition?

11          MS. WEISER:  No, Your Honor.

12          THE COURT:  Mr. McKelvie?

13          MR. McKELVIE:  No, Your Honor.

14          THE COURT:  Would you like to be heard by way of

15    argument?

16          MR. McKELVIE:  Yes, Your Honor.

17          THE COURT:  And I would ask you to argue both on the

18    convictions that arise from the new indictment in 4:23-cr-69

19    and the disposition as to the revocation as well.

20          MR. McKELVIE:  Thank you, Your Honor.

21          Your Honor, as the Court knows from review of the

22    presentence investigation report and its own observations that

23    Mr. Jackson is a young man who has been in quite a bit of

24    difficulty over the years.  Just not to overdo it, but I would

25    like the Court to recognize a couple of things, and the Court

1   has already stated that the Court has reviewed our presentence

2   memorandum report that discusses a couple of things about

3   Mr. Jackson as a human being in the community that he lives.

4          First off, he is a black man who is in a world of --

5   where he's a minority for sure and asks the Court to take into

6   consideration the research that we did that shows that a person

7   like the defendant is far more likely to be arrested in the

8   state of Iowa for drug crimes than a white person and also that

9   nearly all of his prior convictions were marijuana convictions.

10  It's true marijuana was illegal for sure, is illegal here

11  still, illegal many places, but, again, all marijuana related

12  for the most part.  There are exceptions.  He did have a gun in

13  the past, and, of course, that is unacceptable.

14         But to the degree that his prior convictions have

15  mostly to do with marijuana, his young age and so forth, and

16  the disparity, racial disparity, that's evident in the record

17  in the state of Iowa, we respectfully request the Court to

18  consider that and apply a variance to the case as the Court

19  deems appropriate.

20         Now, as far as the probation revocation matter, since

21  the grounds for those -- all of the violations are the same

22  grounds that the defendant was convicted of in the underlying

23  criminal case, same conduct, same findings have been applied

24  that were found in the jury trial in the criminal case, we

25  respectfully request the Court consider running that --

1  whatever the Court decides, which we ask the Court to consider

2  the low end, but to run the sentence in the probation

3  revocation case concurrently with the sentence in the criminal

4  case.

5       We believe that the mandatory minimum sentence in the

6  drug portion of the criminal case is ten years in prison.  The

7  weapons case is five years.  It has to be run consecutive.  By

8  my calculation, if I'm right, that's 180 months.  We

9  respectfully request the Court consider sentencing the

10  defendant to the mandatory minimum, which we submit is

11  sufficient but not more than necessary to meet the ends of

12  justice and the provisions of the sentencing statutes.

13       Thank you, Your Honor.

14       THE COURT:  Thank you.

15       Mr. Jackson, now is the time during the hearing where

16  you have the opportunity to speak.  You do not have to say

17  anything, but if you would like to, the Court will consider it.

18       Is there anything you would like to say, sir, both as

19  to your new conviction and to the revocation?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  Thank you.

22       You may remain seated, sir.

23       THE DEFENDANT:  Okay.  Yes.  First off, Your Honor, I

24  know we haven't gotten to really speak too much very often

25  beyond this whole case or whatever, but I want to say late

1    holidays -- happy late holidays to you all.

2              I didn't -- Your Honor, I didn't go proceed to trial

3    to try to argue or be argumentative or anything.  I just feel

4    that I wasn't being charged correctly.  So, first, I want to --

5    I don't hold no grudges towards you, the PO, probation officer,

6    the prosecutor, or -- everybody has a job to do.  I understand

7    that.

8              But I would also -- I would like to -- I would like to

9    stipulate to the allegations that's being held against me

10   throughout this case leading up to the trial, Your Honor, that

11   not once ever was there a controlled transaction on me.  I need

12   your help to help me understand what a conspiracy is.

13   Your Honor, all the federal government presented in trial was

14   me and a childhood friend -- that I've never disputed it wasn't

15   a childhood friend -- hanging out.  I never knew that was

16   co-conspiring to break the law, hanging out with somebody.

17             Now, therefore, I -- the revocation -- I don't hold no

18   grudges towards my probation officer or nobody.  I just wanted

19   to understand the -- help with what's going on here and how I

20   was found guilty, convicted guilty on these allegations.  I

21   don't dispute or stipulate to the revocation at all.

22             Other than that, that is all that I have to say,

23   Your Honor.

24             THE COURT:  Thank you, Mr. Jackson.

25             On behalf of the United States.

1          MS. WEISER:  Thank you, Your Honor.

2          The evidence of this trial didn't show that the

3    defendant was just hanging out with Tyran Locure, a childhood

4    friend and fellow C-Block member.  The evidence showed the

5    defendant has the most crystal-clear disregard for the law, the

6    rules of this Court, and the probation office and the

7    community.

8          Immediately upon commencing his term of supervised

9    release in January 2023 after his 924(c) firearm in furtherance

10   of a drug trafficking crime, which was for a marijuana

11   conviction, he was living and residing at an apartment

12   regularly with Tyran Locure, who is a childhood friend, who is

13   a felon, who is a fellow C-Block member.

14         The defendant and Tyran Locure could be seen flashing

15   large sums of currency on their phones and on social media.

16   They were advertising marijuana and fentanyl pills on their

17   social media, and during a search warrant of their shared

18   apartment, law enforcement found -- and as the Court heard

19   extensively about at the trial, law enforcement found all the

20   trappings of successful and serious drug dealers.

21         There was a money counter, designer clothing, several

22   guns, scales, baggies, over 7,000 fentanyl pills which weighed

23   over -- a total of over 900 grams of fentanyl that the

24   defendant is being held accountable for.  It is the single most

25   dangerous street drug, as this Court knows.

1    The defendant has shown he has no intention of being a

2  law-abiding, productive member of society, and his crimes are

3  very serious.  In fact, there was evidence at the trial that he

4  began engaging with Tyran Locure and others before he was even

5  out of the Fort Des Moines in the fall of 2022 before his term

6  of supervised release actually did begin.

7    Additionally, we can see from the PSR that even while

8  he has been in custody at the jail, he's had several

9  disciplinary violations, most recently and most seriously on

10  January 5 in which he has been charged with criminal mischief

11  in Polk County for being with other inmates in the rec room

12  smoking by using a tablet's motherboard by a sparking

13  component.  Substance was unknown, but all individuals were

14  noticeably impaired and had to be treated by medical staff at

15  the jail.

16    So even while he's been -- after convicted in this

17  case, while he's been in custody, he has been disobeying the

18  rules of the jail and the law.

19    The Government would ask for a guideline sentence of

20  imprisonment of 210 months for Group 1, the drug counts and

21  felon in possession, with 60 months of imprisonment to follow

22  on Count 3, the 924(c).

23    As for the revocation, the Government would ask the

24  Court to sentence the defendant to the high end of the

25  guidelines, which is 46 months, to be served consecutive to any

1   sentence imposed for the new charges.

2        Again, while he was on supervised release for the

3   very, very short period of time he was on supervised release,

4   which began in January of 2023, he committed these serious

5   crimes that were presented to a jury that a jury convicted him

6   on.

7        Additionally, as I noted in my request for the

8   guideline sentence for his new charges, there was evidence

9   presented at trial that he actually began engaging with or

10  committing other violations that are not before the Court but

11  can be used as 3553(a) factors.  He was engaging in extensive

12  communication with Tyran Locure, who is a fellow C-Block

13  member, he was hanging out with felons, and, again, he was

14  committing these crimes when his supervised release started in

15  January of 2023.

16       So the Government thinks that the high end of the

17  guidelines is necessary for the crimes he committed, which are

18  serious new law violations, and to promote respect for the law

19  and the rules of this Court.

20       The Government would ask that no supervised release is

21  to follow on his revocation case and that five years of

22  supervised release is imposed on his new charges.

23       THE COURT:  Thank you.

24       In determining the appropriate sentence to impose in

25  this and every case, the Court is required to consider a number

of factors, and those factors are set forth in Title 18, United States Code, Section 3553(a). They include the defendant's history and characteristics and the nature and circumstances of the offense.

The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to adequately deter future criminal conduct, both for this defendant and for others who might contemplate committing such an offense in the future.

The Court has to consider the need for the sentence to protect the public and to provide the defendant with needed educational training or other needs in the most effective manner.

The Court has to consider the sentencing guidelines and the advice they provide as well as the need to avoid unwarranted sentencing disparities.

I may not speak about each one of the statutory considerations specifically in articulating the reasoning for my sentence, but in determining the appropriate sentence to impose, I have considered each and every one of them.

Ultimately, the sentence the Court imposes must be sufficient but not greater than necessary to serve the purposes of sentencing.

The largest aggravating factor here that the Court

sees is the speed with which the defendant returned to criminal

conduct.  Looking at the presentence investigation report and

considering the evidence presented at trial, the defendant's

supervised release commenced in January of 2023.  He was in the

community at a residential reentry center starting in June of

2022, and the evidence at trial showed that this conspiracy

began while the defendant was still at the nascent beginning of

his supervision under the probation office and before he had

even left the custody of the Bureau of Prisons.

The defendant is accurate when he says that there were

no controlled purchases directly from him, but the evidence at

trial showed that the defendant was intimately involved with

large-scale drug trafficking in both fentanyl and marijuana.

The exhibits included still photographs from a video.  Exhibits

341, 341A, 341B, 341C, 341D, those are all images of the video

showing the defendant handling packages of M30 pills at the

apartment where the search warrant was eventually executed.

There are videos of and photographs of the defendant

counting money, opening packages of marijuana, in addition to

the observations of law enforcement of the defendant's

engagement with Mr. Locure during controlled purchases from

Mr. Locure.

This is an incredibly serious crime.  Fentanyl is a

very dangerous drug, and the volume of fentanyl that the

defendant possessed is large.  The 690 blue M30 pills recovered

in one drawer is a lot, and then, of course, the 6,870 pills

found in another location in the home is an enormous amount of

fentanyl.

Of course, the combination of the guns and the drugs

makes it more dangerous. That's particularly of concern to the

Court because this defendant already had a 924(c) conviction.

This Court sentenced the defendant to a mandatory minimum of

60 months on an earlier 924(c) conviction arising out of the

possession of a firearm related to marijuana trafficking, and

here we have, in addition to marijuana trafficking, fentanyl

trafficking and multiple firearms present in the home.

This is a serious crime, and it's a dangerous crime,

and it's one that the jury's verdict was well supported by the

evidence for both the conspiracy to distribute and possession

with intent to distribute along with the possessing that

firearm in furtherance of a drug trafficking crime.

A conspiracy, as the Court instructed the jury, is an

agreement between individuals to commit a crime knowing that

the crime was being committed and intending for that crime to

be committed. And there was more than enough evidence to show

that the defendant was engaged in an agreement with his

co-defendant, Mr. Locure, to distribute fentanyl and marijuana

and that he knew of the substance of the agreement, he acted in

furtherance of it and intended for it to occur.

Looking at the defendant's history and

characteristics, the presentence investigation report in

paragraph 678 notes the defendant had an unremarkable childhood

in terms of trauma or other negative experiences. The

defendant has family support here in the courtroom, and he has

family support reflected in the presentence investigation

report.

The defendant has had a criminal history beginning

from the age of 18 at paragraph 61. In that instance, he had a

deferred judgment and then lost that deferred because of

violations. Similarly, other instances where there were

opportunities for leniency in the state court system where

there were suspended sentences or deferred judgments given,

ultimately that -- those were revoked, and the defendant was

convicted in those instances because of his failure to comply

with supervision.

And then, of course, this offense occurred while the

defendant was on supervision for his most recent federal felony

and had only just begun supervision when this crime was

committed.

There was one correction that I wanted to make to the

presentence investigation report. I noted in paragraph 65

there just appears to be a typographical error for the 924(c)

conviction. It says the word "offered," and I think it simply

is supposed to be "officers" in terms of the context of the

sentence.

1          Ms. Weiser, do you agree?

2          MS. WEISER:  Yes, Your Honor.

3          THE COURT:  Mr. McKelvie?  Fourth line down.

4          MR. McKELVIE:  The Court is correct.

5          THE COURT:  And then the violations in the Polk County

6  Jail reflected in paragraph 10 are very serious and recent,

7  this incident that was just described by Ms. Weiser, and that's

8  reflected in paragraph 10.  And also the pending charges in

9  Polk County just occurred on January 5 of this year.

10          That shows that the defendant is continuing to engage

11  in conduct that is in violation of the law despite the fact

12  that he's been detained in Polk County for almost a year.

13          Counsel, do you know of any legal reason why the Court

14  should not impose sentence at this time?

15          MS. WEISER:  No, Your Honor.

16          MR. McKELVIE:  No, Your Honor.

17          THE COURT:  So for the foregoing reasons and after

18  considering all of the statutory factors and the materials I

19  previously discussed, it is the judgment of Court that the

20  defendant, Anthony Tyrone Jackson, is sentenced as follows:

21          On Count 1 of the indictment, 210 months; on Count 2

22  of the indictment, 210 months; on Count 4 of the indictment,

23  180 months, each of which will be served concurrently, or at

24  the same time; and then on Count 3 of the indictment, a

25  consecutive term of 60 months, for a total term of imprisonment

on the new convictions of 270 months.

That sentence is at the bottom of the advisory guideline range and is imposed for the reasons I have previously stated.

On 4:18-cr-114, the Court will impose a term of imprisonment of 30 months consecutive to all of the terms imposed in the 4:23-cr-69 case, for a total combined term of imprisonment for both cases of 300 months. That 30-month sentence is consecutive because the offense occurred on supervised release at the outset.

There are a number of other aspects of the defendant's performance on supervision that are inconsistent with his terms and conditions, including associating with a felon, including associating with others engaged in criminal conduct, including not being truthful with the probation office in terms of the activities he was engaged in. And so, for that reason and consistent with the recommendation of the guidelines, I impose that to be consecutive.

I have varied downward from the advisory range for that revocation because of the overlap in the nature of the violations being the same as those of the new convictions. However, I do believe that a consecutive sentence is warranted, nonetheless, and that 30 months is sufficient but not greater than necessary for purposes of sentencing and the revocation.

I recognize my authority to vary downward from the

1  advisory guideline range on the new convictions, as advocated

2  for by the defense, to sentence higher in the range, or up to

3  the statutory maximums as authorized by statute.

4         Having considered all of the statutory sentencing

5  options, I have concluded that that 270-month term is

6  sufficient but not greater than necessary to serve the purposes

7  of sentencing.

8         It's an incredibly serious offense.  It is an

9  increased seriousness from the prior conviction for which the

10  defendant was on supervision.  It is a conviction that reflects

11  a significant danger to the community, and the need for

12  deterrence and protecting the public are at the forefront of

13  the Court's decision-making on this new sentence.

14         Restitution is not at issue.

15         I do not impose a fine because I find that the

16  defendant does not have the reasonable ability to pay a fine.

17         On each of the new convictions, the Court imposes a

18  $100 special assessment for a total of $400 due and payable

19  immediately without interest to the United States Clerk of

20  Court for the Southern District of Iowa.

21         The Court does not impose any supervised release to

22  follow on the 4:18-cr-114 conviction in terms of that

23  revocation.  I do impose supervised release on the new

24  convictions.  On Counts 1 through 3, that's 60 months, and on

25  Count 4, it's 36 months, each to be served concurrently, or

1  at the same time, for a total term of supervised release of

2  60 months.

3          Mr. Jackson, within 72 hours of your release from the

4  custody of the Bureau of Prisons, you'll be required to report

5  in person to the probation office in the district to which you

6  are released.

7          While on supervised release, you shall not commit

8  another state, federal, or local crime; you shall not

9  unlawfully possess a controlled substance; and you shall not

10  unlawfully use a controlled substance.

11          You'll be subject to at least one drug test within

12  15 days of your release and at least two more thereafter, and

13  you must cooperate in the collection of DNA.

14          You are a felon.  You cannot possess a firearm,

15  destructive device, or ammunition either during your term of

16  supervised release or at any time thereafter.

17          And you must abide by the standard conditions of

18  supervised release that have been set forth by the

19  United States Sentencing Commission, and those will be

20  reflected in the written judgment entered here today, as well

21  as the special conditions of supervised release that were

22  proposed in the presentence investigation report and were

23  unobjected to by the defense.

24          I will briefly summarize those for you now, sir.  You

25  should note they'll be implemented and enforced in full as

written.  It's in part F of the report beginning at paragraph

141.

        You must participate in a program of testing and

treatment for substance abuse.  In furtherance of that

treatment, you cannot use alcohol or other intoxicants.

        You must participate in cognitive behavioral

treatment.

        You must not knowingly associate with any member of

the C-Block criminal street gang or any other criminal street

gang.

        And you'll be subject to a search condition as well.

That search condition can be effectuated with or without the

assistance of law enforcement, including the United States

Marshals Service.

        There's an additional condition I would like to

impose, Mr. McKelvie, and that would be to have a mental health

evaluation and to comply with any treatment that's recommended.

        I don't know if there's some undiagnosed mental health

needs there, but I think it would be beneficial to Mr. Jackson

to have the opportunity to have a mental health professional

provide that assessment at the outset of his supervision to

provide any support that is needed throughout the remainder of

his term of supervision.

        Any objection to that additional condition?

        (Discussion off the record between counsel and the

1   defendant.)

2          MR. McKELVIE:  No objection.

3          THE COURT:  So we'll add the mental health condition

4   as well.

5          Both the length of the term of supervision and the

6   conditions I have imposed are based upon an individualized and

7   particularized assessment of this defendant's supervision needs

8   after reviewing and considering each of the relevant statutory

9   factors under 18, United States Code, Sections 3553(a) and

10  3563(b).

11         As to the revocation sentence imposed, the Court

12  considered the factors specifically applicable to revocation as

13  to that sentence as well.

14         Any requests as to designation or programming,

15  Mr. McKelvie?

16         MR. McKELVIE:  Thank you, Your Honor.

17         Your Honor, Mr. Jackson would like to be designated to

18  a facility as close to Iowa as possible where his family is.

19  He doesn't have a specific request for programming, but he is

20  interested in improvement.  I find him to be quite intelligent.

21  I think he would benefit and he mentioned he wouldn't mind

22  having further educational opportunities, even college courses.

23         Thank you, Your Honor.

24         THE COURT:  The presentence investigation report,

25  Mr. Jackson, didn't indicate any of the -- any programming that

1    you took advantage of in the Bureau of Prisons previously.

2         Are there any particular programs that you would be

3    interested in during this term of imprisonment, sir?

4         THE DEFENDANT:  Just further educational training,

5    like, marine biology, anything in that category is more than

6    welcomed, Your Honor.

7         THE COURT:  Okay.  So I am not sure what types of

8    programming they have in that specifically.  You graduated from

9    Roosevelt, and so you have a solid foundation from which to

10   build in terms of your education, so I am happy to include a

11   recommendation that you have the opportunity to pursue

12   postsecondary education in -- can I broadly say the sciences,

13   in case there is something -- I know marine biology is your

14   specific interest, but to allow them to have maybe more

15   opportunities to provide you with that education.

16        THE DEFENDANT:  Uh-huh.

17        THE COURT:  Is that okay?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  How about any drug treatment?  Did you

20   participate in RDAP last time?

21        THE DEFENDANT:  I wasn't eligible.

22        THE COURT:  Okay.  Well, you won't be eligible for a

23   reduction this time as well because of the firearms.  You can,

24   nonetheless, take RDAP, and I can recommend you for it for your

25   own personal benefit, but it will not reduce your time

1    served -- or time to be served.

2              Would you like me to recommend that, sir?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Okay.  So I will recommend that you have

5    the opportunity to participate in the 500-hour residential drug

6    abuse treatment program and any other substance abuse treatment

7    programs.  And I will recommend that you be designated close to

8    Iowa to facilitate family visitation.

9              THE DEFENDANT:  I appreciate it, Your Honor.

10             THE COURT:  Is there anything else you would like me

11   to recommend, sir?

12             THE DEFENDANT:  Not off the top of my head at this

13   moment, Your Honor.

14             THE COURT:  Thank you, Mr. Jackson.

15             There are no counts to be dismissed, but there is

16   forfeiture.  Preliminary order was entered back on January 5

17   with the firearms and the currency.

18             You agree that that order was entered consistent with

19   the record made at trial and the waiver of forfeiture by your

20   client, Mr. McKelvie?

21             MR. McKELVIE:  Yes, Your Honor.

22             THE COURT:  So that final order of forfeiture will be

23   entered here today as well.

24             Mr. Jackson, you do have the right to appeal the

25   convictions, the revocation of your supervised release, and the

sentences that I just imposed.  If you wish to pursue any of those appeals, you must file a written notice of appeal in the particular case within 14 days of the entry of judgment.

Do you understand the time limit for filing a notice of appeal, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you wish to pursue an appeal and you cannot afford an attorney, one can be appointed to represent you.  You can also have transcripts of this or any other relevant proceedings made at no cost to you in furtherance of your appeal if you qualify financially.

Do you understand your appeal rights, sir?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Counsel, any matters I failed to address?

MS. WEISER:  No, Your Honor.

MR. McKELVIE:  No, Your Honor.

THE COURT:  Anything further on behalf of the Government?

MS. WEISER:  No, Your Honor.  Thank you.

THE COURT:  On behalf of the defense?

MR. McKELVIE:  No, Your Honor.

THE COURT:  The defendant is committed to the custody of the United States Marshals Service for transportation to the designated Bureau of Prisons facility.

Mr. Jackson, I wish you the best moving forward, sir.

1          THE DEFENDANT:  Thank you, Your Honor.

2          THE COURT:  That will conclude the hearing.

3          (The sentencing hearing concluded at 9:48 a.m.)

1                            CERTIFICATE

2              I, Chelsey Wheeler, a Certified Shorthand Reporter of

3      the State of Iowa and Federal Official Realtime Court Reporter

4      in and for the United States District Court for the Southern

5      District of Iowa, do hereby certify, pursuant to Title 28,

6      United States Code, Section 753, that the foregoing is a true

7      and correct transcript of the stenographically reported

8      proceedings held in the above-titled matter and that the

9      transcript page format is in conformance with the regulation of

10     the Judicial Conference of the United States.

11             DATED this 16th day of April 2024.

12

13             /s/*Chelsey Wheeler*

14             Chelsey Wheeler
               Certified Shorthand Reporter
15

16

17

18

19

20

21

22

23

24

25